You may be seated. The time is set for argument in ACLU of Nevada v. City of Las Vegas. Counsel? May I proceed? Nice to see you again. It's been a few years. Glad you remember. I'm Mark Lopez. I'm appearing on behalf of the appellants and I'm appearing with Alan Lichtenstein, who, together with myself, has been working on this litigation since 1998. Your Honor, as recently as 1998, this Court held that Las Vegas authorities could not prohibit the distribution of commercial literature on the long — along the Las Vegas Strip, despite the claim that the ban was necessary to protect the gaming and tourism industry. A few years later, in this case, in 2002, the Court held that Las Vegas authorities could not prohibit the distribution of literature on Fremont Street, despite the very same claim that the ban was necessary to protect the gaming and tourism industry and the investment-backed expectations of the — of the gaming industry. The City — the City sought review from the full Court. That petition was denied. The City went to the Supreme Court. That petition was denied. Despite these binding precedents, the City is enforcing a broadly construed anti-solicitation ordinance in a way that or newspapers on Fremont Street, but also core political, religious and religious activity, if it contains information inviting the reader to support or join the organization. The ACLU of Nevada is prohibited under this ordinance from distributing its most basic pamphlet or brochure because it invites — or because it contains membership information. This ordinance, although it's crafted as a solicitation ordinance, does more than target panhandling or peddling. That would be a different case. This ordinance prohibits every conceivable communication by advocacy groups that has any solicitation aspect, regardless of whether the group is raising money on the spot or simply asking the reader to join the organization. Your Honor, this is a — not an abstract problem. This is how the defendants have enforced and construed the ordinance and the record. Does it make any difference — does it make any difference if they — if the solicitation is asked for on the spot, you know, let's join now, join today, or, you know, here's our Internet address. All information about our organization is on this address, and you can join by finding us at www.aclu.nevada. Does it make any difference? Does it make a difference analytically, or does it make a difference under the ordinance? Both. Yeah. Under the ordinance, as construed by the defendants, and there's ample evidence of the — of this in the record, there's been correspondence going back and forth, the — the solicitation cannot invite people to join the organization or — as a member or to bring in contributions. Very — On the spot or in the future? Both. Okay. Now, analytically, does it make a difference whether the restriction only bans on-the-spot contributions by charitable organizations or political organizations? The answer to that question, Your Honor, would be that that type of First Amendment activity might be different than asking a reader to make a future donation, but in a public forum, it probably shouldn't make a difference, Your Honor, simply because it's still subject to time, place, manner analysis. And under time, place analysis, we submit that advocacy groups, whether it's the ACLU or to take it to an extreme, whether it's the Salvation Army, should be able to solicit contributions on the spot in a quintessential public forum. The city has at its hand means to regulate disruptive types of aggressive solicitation. They could pass a narrowly tailored law, which this isn't because it reaches ACLU speech. It could pass a narrowly tailored law, which I think other jurisdictions have, that says you can't solicit next to an ATM machine. You can't solicit within 10 feet of a storefront. You can't engage in aggressive solicitation. You can't engage — you can't do it in an intersection. I think there's a Ninth Circuit case on point on that. There is a Ninth Circuit case on point on that. So depending on the forum and the constraints that are attended to that forum, there could be different rules for different types of solicitation, Your Honor. But this is unabashed. This is your quintessential public forum. We've crossed that bridge. We've won the right to distribute literature. And that right is now being eviscerated by an unreasonable construction of the solicitation ordinance. Kennedy, is there a difference between — legal difference between the act of solicitation and, you know, literature or speech concerning solicitation, you know, words of solicitation? Does that make any difference under the First Amendment? They're both speech, Your Honor. I mean, I think the Supreme Court has told us, and I think this Court has told us, that solicitation, charitable solicitation, is fully — is entitled to full First Amendment protection. And when it's engaged in public forum, it's subject to time, place, manner, regulation. I mean, we know that people can go door to door. There's a — Well, what I'm getting at, in other words, the act of solicitation itself, separating it from the words, you know, say, you know, give me a buck, is content-neutral. Right? Your Honor, I can envision a solicitation ordinance that is content-neutral. This one isn't, both as written and as construed. Understand that this solicitation ordinance was adopted as part of a regulatory regime that allows the — the Fremont Street Experience Limited liability officials to allow its members and its partners and people who engage in — in business with them to engage in the very same types of promotional and advertising activities that my clients are prohibited from doing so. So if Coca-Cola, for instance, or a telephone company wanted to sign up members, they could simply enter into an agreement with the Fremont Street Limited liability company, set up a table under the tabling ordinance that we're — we're also challenging here, but set up a table or not set up a table, and give out literature promoting that product. I mean, that's — at the end of the day, that's the problem with this statute, Your Honor. We have a — we have a — what's the expression? We have a two-tiered system. We have commercial speech that's approved by the Fremont Street Experience Limited liability company on the theory that it's — it's their venue, and they have special rules that apply to them. And — and then we have a set of rules that apply to everyone else. And — and that's why we say that the — that the ordinance is, in fact, content-based both as written as — and as implemented. So I — but I gather if — if the — I call it a flyer or whatever, the ACLU brochure didn't ask for — invite a person to join, it would be no problem. They could just pass it out, correct? Your Honor — Or in other words, or an easier one, if there was just a sheet of paper that said, you know, you know, peace, stop the war in — in Iraq. Right. In fact, there are some leaflets like that in the record. That would be okay, is that right? Is that the way you understand it? That would be okay under this ordinance. The difference is that most brochures by advocacy organizations, in fact, invite the — the reader to support the organization, to volunteer, to — to contact them, and under this ordinance, that kind of activity is prohibited. I would just bring you back to the Strip case, Your Honor. The Court said that the distinction between commercial speech and noncommercial speech, which was the distinction in that case, was a flawed distinction because there's nothing more disruptive about leafleting that has no commercial content than leafleting that has commercial content. And — So is the — is the — is the — is the — is the — part of the problem here that — that if the flyer, whatever it is, brochure, whatever, document, uses the words that are tantamount to soliciting, that that's what makes this content-based? Your Honor. You have to look at this. You have to look at really what the flyer is seeking. Right. As written, the defendants maintain that it's a content-neutral document. Right. I don't think that's the end — hardly the end of analysis, but that's their position. We disagree. We — our position is that — that it targets the solicitation aspect of the communication in the same way that an electioneering ban — and I represented the ACLU in the McConnell case involving the electioneering ban — in the same way that an electioneering ban targets the election aspect of — or the election speech aspect of the communication. This targets the solicitation aspect of communication, this — this ordinance. Moreover, it requires the policeman to read the ordinance, I mean, to read the communication, and figure out if the — if the communication is soliciting anything of value. And that's a — that's a broad term. I mean, they construed it very broadly, to mean membership, to mean money, to mean volunteer help, anything of — of value. It requires the policeman to do that. And under SOT — SOC, that would seem to meet the definition of — of a content-based distinction on its very terms. Now, I understand the Acorn decision stands in contrast to that. So there is some — some tension in those decisions. But at the end of the day, as I've covered already, the — this — this ordinance is actually enforced in a content-based way, because it's enforced under a regime where Fremont Street speakers, if you will, get to engage in the very types of solicitation and promotional and advertising activities that my client can't. They're seeking a competitive advantage over — over the strip, in effect. And that's what makes it content-based. I would also point out, even under the terms of the solicitation aspect, there is a provision that allows people to solicit from out in front of their own property. And if you've ever been to Fremont Street, and if you read — and it's in the record as well, this is exactly what happens. You have people in costumes standing out in front of the casinos handing out thousands and thousands of promotional flyers every night. That's in the record, Your Honor. The City says they're on their own property. Why would that matter, Your Honor? If the City is interested in — if the City's goal is to prevent the — the distractions of promotional materials that my clients present or that a outcall service might present or that a competitor might present, what is it — why is that any more distracting or disruptive than the thousands of promotional giveaways or promotional flyers that are distributed from out in front of the — from the casinos? I don't think distraction is necessarily the issue. The question is economic advantage. I mean, the allowed solicitations are done under the aegis of either a property right or some permit in which the City benefits. And the distraction they're talking about is the distraction of competitors, perhaps. Well, our position, Your Honor, is that the fact that the First Amendment is bad for business has never been a consideration for this case. No, I understand. But you're making a different argument. I'm just responding to it. I mean, I think you'd agree that you could — the City could ban solicitation, period, on Fremont Street, ban all solicitation. No, I don't. I think that a ban like that, even — It's content neutral. Right. But they still have to get past the narrow tailoring requirement of time, place, manner regulation. And under this Court's jurisprudence, I'm not aware of any cases that would prohibit an organization from distributing literature that contains contact information or invites the reader to join the organization or even invites the reader to make a contribution at that time. This is the quintessential public forum. As I said earlier, you could have a narrowly tailored solicitation ordinance that targeted peddling — I mean, panhandling, perhaps, or peddling. Or — yeah. But that's not what this does. This is — this goes way beyond that. And the problems that are caused by my clients aren't the types of problems that are — that the City Council is concerned with. They're concerned with, understandably, with beggars and panhandlers. And that's what the record shows you. So if your time is running, but I would appreciate if you could address the tabling or aspects of this and what the district court actually did. Right. Remember, there are half a dozen prohibitions contained in the legislation. You can't have parades. You can't have tabling. You can't distribute literature. You can't engage in a half dozen other types of First Amendment activities. And then there's an exception contained in the ordinance both for labor organizations and for Fremont Street-sponsored tables, people who have the imprimatur of the Fremont Street authorities. To me, that's a classic base content-based discrimination. What the district court did was analyze it under the Moseley line of cases, which — citing the Equal Protection Clause. But I think, as we all know, the Moseley line of cases is often and frequently and correctly thought of as, you know, both a First Amendment precedent and as an equal protection precedent. They get to the same result. They engage in the same analysis. And I think the district court — Sotomayor, you determine that the tables are part of First Amendment expressive activity or intricately tied to First Amendment activity or connected to First Amendment activity? Well, I think that, you know, this Court's opinion made it reasonably clear that tabling is commonly associated with First Amendment activity. The district court decided not to — the district court didn't analyze it in those when discussing the tabling warnings. And I'm at page 9 of the opinion and 0234 of the record excerpts. When the government — when government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates equality. So he implicitly is saying that it was connected to First Amendment activity. Yes, Your Honor. That's how I see it. And I'll reserve the rest of my time. Thank you. Good afternoon. May it please the Court, Todd Bice on behalf of the Fremont Street Experience Limited Liability Company and Joe Schelake, its manager. I'd like to reserve five minutes of our time for my co-counsel on this, Bill Henry from the City of Las Vegas. It's important, I think, to remember how we're here and what we're here on and how we got to this point. We're here on a summary judgment ruling from the district court, which is based upon an order of remand from, as it turns out, this very same panel. Based upon that order of remand, there were three issues that this court had remanded to the district court for consideration. In light of the fact that this panel had disagreed with the district court judge that the ball constituted a traditional public forum, he had analyzed all of the ordinances under the reasonableness standard. This court had invalidated some of those ordinances under time, place, and manner analysis after having ruled that it was a traditional public forum. We're now back here in light of your instructions on remand. And the instructions on remand were, number one, to consider the city's solicitation ordinance under time, place, and manner. And I believe, I'm not going to quote it back to you verbatim, but basically what your instructions were is that the city had to present evidence that the ordinance was narrowly tailored and that it did not suppress substantially more speech than was warranted. So we just send it back to consider the ordinance under, you know, with our direction that Fremont Street was a, you know, public forum. That's all we told the district court to do. Well, I believe that I could get out the order and quote it, but basically that was the instruction. Your instruction was we had to submit evidence on those points. All right. If the court's intention was to remand the entire thing back, that's fine. We're prepared to address that. I'm just simply noting what the court's order was. The second issue on remand was the question of the tabling ordinance and the First Amendment challenge to the tabling ordinance that the ACLU had presented. Specifically, this Court's instructions were that the ACLU might not be able to provide  want to consider amending its complaint, and that it would have to present some evidence that this activity that it was proposing was actually speech within the meaning of the First Amendment in order to maintain such a claim, since that is what the basis of their claim is. The final point was this issue of an overall injunction which they, after remand, have abandoned. So we're here really on two issues after the remand. One, the solicitation ordinance, and two, the tabling ordinance. And they had another issue in there, the leave to amend or parade, the parade or demonstrations or something? That's correct. They have a they filed a motion for leave to amend, and the district court denied that motion. And I'm prepared to address that also for you today, if you would like. I think that that was well within the district court's discretion. It was after, really, the second remand. This case is now we're in front of you for the second time, but this is the third time that we are at the Court of Appeals on this case. Turning to the case where we to the claim where we had the burden, i.e., the city and the Fremont Street experience, we did what we were instructed to do by this panel upon remand. We compiled and submitted, I think, a rather extensive record concerning how the solicitation was conducted for the purposes of the mall. And it's important to understand that is not an ordinance, unlike a lot of the other ordinances which were addressed in your original opinion in this case. This ordinance is in a separate chapter because it is an ordinance that applies throughout the city. This is, in other words, a citywide ordinance, not something that was adopted specifically with respect to the Fremont Street experience pedestrian mall. This ordinance has a number of restrictions. First of all, it restricts what is called as aggressive solicitation throughout the city. The second aspect of the ordinance is it restricts solicitation into certain areas, bus stops, on buses, parking garages, within the exact footage, I think it's 20 feet within ATMs, 5 feet or 10 feet within the entrance of any sort of building or structure. And the last part of it, it also restricts solicitation within the scope of the Fremont Street experience pedestrian mall. And that seems to be, as I understand the basis of the claim, the only challenge made. There's no challenge that I have seen been made to the ordinance in general with respect to its other restrictions and applications. Now, that location, area designated pedestrian mall, applies in the city of Las Vegas only to the Fremont Street experience, or are there other malls in the city? That is the only one as defined in the city code, Your Honor. Turning to that, so we have this overall ordinance that applies throughout the city. It restricts solicitation in certain locations, one of which is the Fremont Street experience mall. And as far as I know, that's the only basis upon which it's been challenged here, is within the confines of the mall. Turning to that, I understand the ACLU's arguments about content-based. However, if that argument were accepted, then every solicitation ordinance is content-based. Because by definition, if it's focusing on solicitation, the government is trying to focus on a particular type of activity, they're going to say, well, it's content-based because it's singling out solicitation. It doesn't apply to all other forms of speech, so hence, it's content-based. That obviously cannot be the law, because if that were the law, you could never have a solicitation restriction, pure and simple. And obviously, if that were really the case, I'm unclear why we're here on remand then, or why there was even a remand then, because that was the exact same argument they made to you the last time we were here, identical argument, identical cases, identical pleadings. I mean, on remand on this, as we have pointed out in the brief, the ACLU did nothing on this case other than resubmit all of the same stuff that it had submitted in the prior appeal. There's not a single piece of new paper, not a single new witness, new piece of evidence of any sort. All we're here back from their perspective is, were we arguing the exact same thing? I'm unclear why there was even a remand if that was really the intent of this panel, because they presented absolutely nothing on that. The content-based argument is the exact – I mean, I don't have a transcript of what the argument was last time we were here, but it's the exact same argument. From our perspective, we obviously don't think that holds water because, as I've already articulated, if it did, then no solicitation ordinance would ever pass muster. And number two, why did you remand this matter back? One would think that you should have accepted that. If that argument had merit, you would have accepted it at that point in time. Turning really to the substance here, which is the question of, in other words, narrow tailoring. Is this ordinance sufficiently narrowly tailored in order to achieve what the city is trying to achieve down at the Fremont Street experience? Focusing on that, obviously, there are other aspects of the ordinance where it covers other areas, but aren't before the Court. That issue under the law, the question presented is, is the city's interests advanced less effectively without the ordinance? That's the test. Does it meet that test? That's the question you have to decide. The district court believed that it did, and obviously we believe firmly that it did. If you look at the record that we presented, tabs 7, 8, 9, 10, and 6 of the supplemental excerpts of the record, we presented two sort of forms of evidence to the district court on this point. And it's important to note, again, the ACLU presented nothing to rebut any of that other than what they had already submitted in the first appeal on this. And that evidence that we submitted, again, two categories. One was the initial evidence that was presented when the ordinance was initially adopted, and that was clear back, I believe, in 1995. And what the city had considered then, it held extensive number of public hearings on this matter concerning the need for this ordinance. It heard from various consultants, advertising executives, tourism officials from the Las Vegas public body, the Las Vegas Convention and Visitors Authority, all recognizing this is what you're going to have to do if you want to be able to maintain the environment of this facility. And if you want this facility to succeed, you're going to have to do that because you're not going to get people to pay you rent to have their businesses in there if they're going to be subject to solicitation, whether it be from competitors of their own. I mean, if I'm going to, let me give you an example. I want to set up a t-shirt stand in the Fremont Street Experience, sell Las Vegas souvenir t-shirts. I want to, and I have to pay you, the going rate I think right now is $3,000 to $3,500 a month in rent to the Fremont Street Experience. I am not going to pay you that if Joe Blow can set up a table either inside the mall or right outside the mall on the public sidewalk and sell those shirts for substantially less and then be able to walk in and walk up to my customers with a piece of paper that says, t-shirts $5 right this way. It's not going to succeed. So the question is, is the government's interest here? I don't think anyone can seriously quarrel that the government has significant governmental interest at stake in this. They've spent tens of millions of dollars to construct it. And in order for it to survive and be economically viable, under the law, it has to be able to generate revenue sufficiently to cover its expenses, and its operating budget, I believe from the record, is somewhere in the $7 to $10 million a year price range. In order to do that, they have to be able to rent out space in the mall. And I believe it's tab 10 of the supplemental excerpt of the record. If you look at that, you will see, and I know it's very small and I apologize, all the little dots throughout the mall area, all those small dots. All those small dots, for the most part, are people who have rented what are known as kiosks. I think there are over 30 of them, between 30 and 50, who pay rent every month for the right to do business in there, operate their little shop within the mall, and sell their goods and services. What the city has recognized is it cannot allow people to come in and So the whole purpose was to prevent competitors from soliciting business. I can't tell you that that's the solution. You weren't concerned about the ACLU. I can't. No, I think that would be the one. Political messages and — I think it would be disingenuous for me to say we were not concerned about — we were only concerned about business competition. I don't think that's accurate. I think that we were concerned about maintaining the overall environment. Business competition is certainly one thing that would be a big problem, but so is competing — selling Bibles. I mean, if you're competing in this area for tourism dollars — let's just use the extreme example of Bibles. I want to sell you a Bible. Or the ACLU or anyone else wants to do that. Is that competing for those tourism dollars? Yes, it is. And the question — How exactly is the ACLU competing with you? With the businesses you want to protect? Well, they're competing with us in the business competition way by if they want to sell things. They want — one of the things that they originally were trying to do here was sell message-bearing T-shirts and message-bearing merchandise. Well, let's just say we're selling memberships. Okay. How are they competing with us in that regard of memberships? I don't think they are competing with us. So what's the rationale for excluding them? The — the — if you look at what the district court had said on that issue, the district court said the city could not enforce its ordinance if it just had contact information. What the city — for example, just membership information. That's what the district court said. That's at the record of — their excerpts of record at 189. What the district court's ruling was, though, is that the city could, to the — to the solicitation ordinance. And that's what the district court drew that line. And we understand that line. And I don't believe that it's — it's really hard to follow. The district court said if they had contact information, that they were free to submit that out. Join the ACLU. Here's the phone number. Support the ACLU. Here's the phone number. That's — we acknowledge, different than competing with the entities that are paying us rent inside the facility. Well, let's assume they're selling T-shirts that say ACLU on them. With whom are they competing? They are competing with the person who might be right beside them selling Las Vegas T-shirts. Who's paying $3,000 or — or more a month to do business there, and the ACLU is paying nothing? It's — that is no different — It would be a different matter if they had — had Las Vegas or Nevada scenic views on the T-shirts or something, but — but a completely different message. Which strikes me as not in — not in direct competition. Can I envision a lot of situations where they would not be in direct competition? Of course I can. Just as in one world, one family — And let's — let's take the typical family that's walking along Fremont Street and they've got a choice between, you know, you went to Fremont Street and all I got was this lousy T-shirt or, you know, let's support the ACLU. Yes. I mean, they're completely different markets, wouldn't you say? Sure they are. All right. They are absolutely different markets. But are they — are they still selling T-shirts and are they competing for the same tourism dollars? Sure they are. You might not — you might get one person who doesn't want the ACLU T-shirt. You might get somebody else who does. But that's — that was exactly the point, I believe, Your Honor, with respect to the one world, one family case in Waikiki. That was exactly what was going on. And what this — this court had ruled was they can't — the people who are having to pay taxes and own property and the like can't compete if you're going to allow these people to basically set up a table and say, okay, now I'm selling souvenir T-shirts. The — and the flip side to your hypothetical is the only way then we could control it is if we got engaged — if we got ourselves involved in regulating the message. Now we can't prohibit people as long as they are selling certain types of merchandise that is expressive, but we can stop the other ones who are selling merchandise which they would characterize as expressive. The World Wildlife Fund support Nevada deserts. I mean, is that — that is a quandary we can't get into, nor would we want to. That's the point of why we don't have a content-based regulation. We have a total restriction on solicitation. It's none of our business. You're a little under — you're a little under five minutes. Do you want to allow the State to — Well, I will stop or I'll answer any questions that His Honors have. I think we'll hear from the State. Thank you very much. Thank you. Good afternoon. May it please the Court, I'm William Henry, Senior Litigation Counsel for the City of Las Vegas, and I'm appearing before you simply to address the severance issue as it is referred to as the Tabling Ordinance 1168-100-H. And I'm before you because as counsel for the government, I wish to invite you to sever out the — what's been referred to as the labor exemption if you find, indeed, that this makes the ordinance as a totality a violative of the equal protection provisions of the United States Constitution. And since this is a city ordinance and I would be — we would be asking you to strike part of it under certain circumstances, I thought it most appropriate that I issue that invitation. I think that — It's a content-based difference, you'd have to agree, in terms of speech. I wouldn't precisely agree with that. I think the attempt was certainly made sensitive to that notion to craft it in such a way that it referred precisely to a holding of the United States Supreme Court. But it is the case that that provision was added to 1168-100-H and other portions of the Municipal Code years later in an effort to, I suppose, protect labor in the City of Las Vegas. But it's also the case that the law of this circuit, the United States Supreme Court, and the Nevada Supreme Court, it's pretty clear that courts ought not invalidate more of a statute than is necessary, and that if one portion is found by the court to be constitutional and another portion not, then the court has an obligation to look to severance. And if the — if severance occurs and the remainder of the statute can stand alone and accomplish the legislative purpose, then it's the obligation of the court to do that. And I think that — I can't remember. What did the district court say in response to that argument? Or was that argument ever advanced to the district court? The district court — that argument has been advanced repeatedly to the district court, and it has ignored it. The district court never ruled on it? No. Let me switch gears a little bit. On behalf of the City, what do you — because we've now clarified that the ACLU has an as-applied-as-well-as-facial challenge, what do you — how do you view the — what activities do you think, given the court's order and given the scope of the ordinance, what activities of the ACLU do you think the ordinance prohibits? What are they allowed to do? What are they not — Soliciting ordinance? Yes. Do you agree, for example, that they can solicit and — or stop people and hand out leaflets and provide information on membership? As long as they don't solicit membership, yes. As long as they don't solicit membership. He just said they could solicit membership. Or he read — he read — your co-counsel just said that the district court's order said that they could solicit membership. So I — you know, I'm a little — That's why I asked the question. You have to enforce it. The Fremont Street experience doesn't have the authority. What do — well, go ahead. The way we view the lower court's order and our ordinance is that as long as there isn't a solicitation for something of value, then hand-billing can occur. So, memberships are out, but if you want more information, call X is in — call this number is in or not. As long as there isn't a direct request for contributions? I guess I don't understand your answer in terms of membership. We'd like you to have a — join the ACLU. Call this number. Is that — is that in your view — does that activity or that on a hand-bill violate the ordinance or not? I think I didn't understand your question initially. No, in my view, it does not. It does not? It does not. So soliciting memberships does not. Selling anything or asking for contributions does. Is that where you draw the line? Yes. Okay. Any further questions? Thank you. Your Honor, I'm glad Mr. Bice cited the Honolulu case. That's the Waikiki Beach, no peddlers. Right. The one-world case, yeah. Right. No peddlers. That's a narrowly-tailored ordinance that — that addressed the City's concern with interfering with the other T-shirt sellers who, you know, who were licensed to do so, or the storefront owners. That's not what we have here. What we have here, actually, is a vending ordinance that was enjoined by the district court because it's granted unfair discretion in the licensing authorities. This Court affirmed in the first opinion, and now they're sidestepping that opinion by enforcing the solicitation ordinance to prevent people selling T-shirts. That's what we have here, Your Honor. The answer is to craft a — and I don't think we'd object to it — craft an anti-peddling ordinance that — I can think of a lot of First Amendment activities that can be prohibited in a public forum because they're disruptive. Or take street musicians or bands. You have to have some regulation of that. Take peddling. You have to have some regulation. Take panhandling. Have some regulation. Craft a narrowly-tailored ordinance. This isn't the narrowly-tailored ordinance. At the end of the day, Your Honor, how is this case different from the Strip? The City has a very significant interest in what's going on in the Strip. Garriston, Olivera State Park down in Los Angeles, the City has a big interest in making sure that commercial district is viable. New York City has a big investment in making sure Times Square, you know, generates as many tax revenues as possible. And the First Amendment is inconvenient with those commercial objectives sometimes. But that's — but the courts — that's not where the analysis ends. The courts inevitably engage in a balancing. And at least in this circuit have inevitably said that leafleting, whether it's commercial or noncommercial, is not the type of First Amendment activity that is so disruptive of the streets and sidewalks that it can be prohibited. There's half a dozen cases on point, Your Honor. They're all cited in my brief. So do you want to sell — do you want to sell T-shirts? Is this what this is about? No. No. I mean, it seems to me as we get further — drill further down to this case, there's not much that separates you. They say you can put a — you can distribute leaflets, just not ask for money. What do you want to do? That's not true. That's not what the district court order says. The first district court order in this case that he — that Todd cites it to you, we had to go to — first, they started arresting or removing our clients for — for — for distributing literature that said, contact us. We got a letter from Todd that biased us. Right. Well, now he says it's okay. Okay. So what else do you want to do that you think you can't? The court said there's a difference between a letter that says, contact you, and a letter that says, join the ACLU or support the ACLU. And the district court has a whole discussion of it at page 0232 of the record that says, first opinion, upholding the ordinance, and that's why we're here, as far as it goes in prohibiting organizations like the ACLU from inviting people to — to — to support them or to join as members. It's very explicit. I think Todd misspoke, frankly, but the opinion is — is very straightforward. They make a big deal about the fact that we put on no evidence. I don't know. We have a whole record. We have a whole record exodus of our record. I'm not sure. And no matter how many times I say it, it doesn't make it true, Your Honor. The fact of the matter is, you know, that they've introduced pre-legislation testimony from the financial backers of this that say — that says the First Amendment is bad for business. That's the sum of their evidence. It primarily focuses on panhandlers. It primarily focuses on people that distribute flyers, girly flyers, what are they called? You know, you get the idea. I hope you get the idea. That's what their evidence consists of. It has nothing to do with the ACLU. It has nothing to do with the Salvation Army. No one's at a competitive disadvantage here. They seek the competitive advantage over the Strip. Your Honor, my time's up, but I'd like to address the parade ordinance. Breyer. Well, why don't you do that briefly? It's hard for me to see how you raise that in your notice of appeal, so you might want to address that. Okay. Yeah. I mean, let's just take that first. The notice of appeal says notice is hereby given the plaintiffs' appeal of the United States Court of Appeals to the Ninth Circuit from the parts of the attached order partially granting the defendant's motion for summary judgment. If you hadn't been specific in there, I think the rule would be that, you know, certainly anything in the order is fair game. Okay. But explain to me why, because since you were specific, why you think the notice of appeal encompasses that issue first. Well, again, I mean, we briefed the point that we thought the general rule, our view is that the general rule is that notice of appeal from the final judgment encompasses all previous orders. From your comments, it sounds like that's the basis for why we think the appeal lies properly. If it sounds like you're concerned that we were too specific in our notice of appeal, and because we were too specific, it excluded subsidiary orders. Okay. I'll leave that to your wisdom. But I ask you to indulge me, because this is the guts of the matter. We have a situation. The whole catalyst for this lawsuit is there was a small demonstration on Fremont Street years ago. Nothing in the municipal code prohibits it specifically. We didn't know how to characterize that claim. So we simply attacked the operating discretion that was given to the Fremont Street Limited Liability Company as plenary and unlimited, and challenged that. The district court refused to enter a general injunction that enjoined them from interfering with general First Amendment activities. That came up to the court of appeals. The court of appeals said, fix that. Clean it up. Go back on remit. You know, sort this out. We tried to. And the reason we targeted the parade ordinance is that in their case, there was a lack of the statutory authority to prohibit demonstrations. So we simply went back and amended a complaint. District courts allow some amendments to clean up the tabling dispute, but doesn't allow us to amend it to add the parade provision. And says prejudice. It offers no explanation. Where's the prejudice here? The tabling provision is sub C of 11.68100, A, B, C, D, E. They all prohibit. We all challenged A, B, C. We challenged A, B, D, E, F. We didn't challenge C because no one wanted to engage in a parade. They say the parade provision is the source of statutory authority that gets them, allows them to prohibit demonstrations. So we've always been talking about demonstrations. We've always been talking about LVMC 11.68100. And the parade ordinance suffers from the same constitutional defects as every other provision in the Code. So we're trying to figure out, well, you know, from our point of view, where's the prejudice of defendants? Why didn't the Court basically allow us to do this little housekeeping business, which this Court contemplated when it said go back and fix up your pleadings a little bit? That's where we are. If the amendments allowed, and we think it was an abuse of discretion, we would just ask you to decide that, this case, without sending it back to, you know, decide the constitutionality of that issue, without sending it back for ---- Roberts. Hard to reach that, if your issue is the motion. It's a judicial economy argument, Your Honor, because we've been back three, four times. The case has been around forever. And, you know, at the end of the day, why should they be allowed to break up my demonstrations, my clients' demonstrations? That's the guts of it. What's your response to the suggestion on severance? Right. Well, again, you have a municipal code that broadly accepts not only labor activities, but all speech that's approved by the Fremont Street Experience Limited Liability Corporation. So under the tabling ordinance, not only is labor accepted. You could, if you want to sever them out, I don't know why you would. That's not the fact that it was passed later instead of before suggests that it was there for a purpose. But even if you separate ---- even if you severed out labor, you still have the broad exception for Fremont Street Experience Limited Liability Company promotional tabling. And that undermines the ---- and you can't sever that, because that would undermine the whole justification for the enabling legislation, which is to give these folks a competitive advantage. They want to be able to engage in promotional activities. That's my response. Thank you. Thank you all for your arguments. The case is here to be submitted and will be in recess. Thank you.
judges: Tashima, Thomas, Paez